UNITD STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ERIS JOSE DURAN COLON                      :
                                           :
           Petitioner,                     :
                                           :       08 CIV. 8917 (HB)
           -against-                       :
                                           :       OPINION & ORDER
UNITED STATES OF AMERICA                   :
                                           :
           Respondent.                     :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., United States District Judge:**[*]

      Following a bench trial before Hon. Michael Mukasey on August 1 and 2, 2005, Petitioner Eris Jose Duran Colon ("Petitioner" or "Colon") was convicted of (i) conspiracy to distribute heroin in violation of 21 U.S.C. § 846; (ii) possession of a fraudulent alien registration card in violation of 18 U.S.C. § 1546, and (iii) fraudulent use of a passport in violation of 18 U.S.C. §1543. On February 14, 2006, Judge Mukasey sentenced Colon to three concurrent terms of 84 months imprisonment, to be followed by a term of supervised release. Colon moves pursuant to 28 U.S.C. §2255 to vacate his conviction and sentence on the basis of ineffective assistance of counsel. For the reasons that follow, the petition is DENIED.

## BACKGROUND

      Acting on information concerning drug activity at the location, on July 29, 2004, three members of a Drug Enforcement Agency ("DEA") task force traveled to Petitioner's apartment in upper Manhattan and asked for and obtained his consent to search it. Trial Transcript, August 1 and 2, 2005 ("Tr.") at 24, 28, 132. During the search, the agents discovered certain paraphernalia associated with narcotics trafficking, including a "drug press" and a digital scale, as well as five passports from the Dominican Republic and a resident alien card (a "green card"). Tr. 133. Some of the documents featured Petitioner's photograph but bore a name not his own: Jose Ernesto Tapia Martinez. Tr. 133-34. Before he was either arrested or advised of his rights under *Miranda*, Colon informed one of the agents that the drug press belonged to a friend. Tr. of Suppression Hearing, Mar. 24, 2005 ("Supp. Hrg. Tr.") at 13-14. Petitioner also acknowledged

---

[*] Keita De Souza, a summer 2009 intern in my Chambers and a second-year law student at Northwestern University Law School, provided assistance in the research and drafting of this opinion.

that his name was not Jose Tapia Martinez and that he had used the documents bearing that name to travel in and out of the country. *Id.*

Colon was arrested and subsequently charged in a three-count indictment with conspiracy to distribute heroin, possession of a fraudulent green card, and fraudulent use of a passport. On October 6, 2004, through his then counsel,[1] Colon moved to suppress (i) the physical evidence obtained from the search of his apartment on the grounds that his consent had not been given voluntarily; and (ii) the statements made to the agents on the grounds that he was in custody during the search and his statements were not preceded by *Miranda* warnings. At a suppression hearing held on March 24, 2005, one of the investigating agents testified that Colon freely consented to the search, telling the agents "he had nothing to hide" and signing a written consent-to-search form. Supp. Hrg. Tr. 8-9. The agent further testified that while other members of the team searched the apartment he sat with Colon in the kitchen area and engaged in "small talk" about Colon's job and his children. *Id*. at 11. The agent then searched the kitchen and uncovered an object that he recognized as a press used to form drugs into shape and asked Colon about it. *Id*. at 13. Colon replied that a friend of his had left it there. *Id.* Subsequently, one of the other agents entered the kitchen and showed Colon the travel and immigration documents. *Id*. at 14. Colon then made the admission pertaining to the passports and the immigration documents. *Id.* at 14. At the conclusion of the search, the agents placed Colon under arrest. *Id.* at 27.

On May 13, 2005, Judge Mukasey found that Colon's consent to search was voluntary and denied Colon's motion to suppress the physical evidence. Tr. of May 13, 2005 Proceedings at 2-5. The Court did not then rule on Colon's motion to suppress the statements.

At a pretrial proceeding held July 20, 2005, Colon's new counsel moved to reopen the suppression motion, arguing that prior counsel had neglected to argue for suppression of the statements. Tr. of July 20, 2005 Proceedings at 5-11. Counsel focused on the statement concerning the drug press, which she referred to as a "very damaging statement." *Id*. Thereafter, Colon's counsel submitted a letter brief to the Court, arguing for suppression of the statement concerning the drug press on Fifth Amendment grounds. In a footnote, counsel noted that

---

[1] Colon was represented by a total of at least four counsel between his arraignment and his sentencing. His first appointed counsel was replaced by retained counsel, Ismael Gonzalez, on August 22, 2004. Gonzalez later applied to the Court to be relieved, and was replaced by John Sachs, who represented Colon at the March 24, 2005 suppression hearing. After the decision on the motion to suppress, Sachs sought to be relieved and was replaced by Marion Seltzer who represented Colon through trial and sentencing.

2

Colon's statements regarding the immigration documents should also be suppressed "for the same reasons that are argued in this letter." July 27, 2005 Letter, Ex. M. The Government responded by indicating that it would not introduce the statement about the drug press in its case-in-chief. Tr. at 2; July 28, 2005 Letter, Ex. N. At the commencement of trial, the prosecution sought clarification about the admissibility of Colon's other statements: "with respect to the statement about the immigration documents, I'm assuming because there was no suppression motion made [as] to those statement, that your Honor is not suppressing them." Tr. at 7. Judge Mukasey stated that is was his understanding there was no suppression motion addressed to those statements, and Colon's trial counsel raised no objection. *Id.* At trial, the Court heard testimony concerning Colon's statement that he used the passports bearing the name Jose Ernesto Tapia Martinez to travel in and out of the country. Tr. at 28.

The Government's case at trial was based almost entirely on the testimony of a cooperating witness, Henry Jimenez, who testified that he began to sell drugs with Colon in 1997.[2] Jimenez testified that in 2000 Colon accepted delivery of 800 grams of heroin from a courier who carried it from Miami to New York in a pair of shoes. Tr. 46-48. Jimenez further testified that between 2000 and 2001, he and Colon did not work together because Colon had no customers for heroin. Tr. 52. Jimenez testified that in 2002 and 2003 he supplied Colon with "little" amounts of heroin "around three or four times," and that he estimated those transactions amounted to "100, 150, 200 [grams], something like that." Tr. 54, 125. Additionally, according to his testimony, in 2003 Jimenez paid Colon to break down and package "a couple of kilos of cocaine."[3] Tr. 55. Jimenez testified that he charged Colon "between 60 and 62" dollars per gram of heroin and that "in the beginning" Colon was good about paying, but "afterwards" he was not and Colon still owed Jimenez $3,000. Tr. 54. The only other witnesses at trial were a special agent of Immigrations and Customs Enforcement ("ICE"), who testified about the

---

[2] The indictment charged a narcotics conspiracy that spanned the period between 2000 and 2003. The Government sought to introduce testimony about transactions which preceded the time charged in the indictment to show how the Jimenez-Colon relationship developed, and the Court allowed it. The Court of Appeals held that the admission of "other crimes" evidence in the context of the bench trial was not an abuse of discretion. *United States v. Duran-Colon*, 252 Fed. Appx. 420, 422 (2d Cir. 2007)

[3] One aspect of Colon's defense against the heroin conspiracy charge was that he was primarily a cocaine dealer. For example, his trial counsel asked Jimenez on cross-examination if he recalled telling DEA agents and prosecutors that Colon "mostly dealt with cocaine," and then solicited testimony from the DEA agent to corroborate that he did. Tr. 124, 143.

3

immigration documents recovered from Colon's house, and two of the agents who searched Colon's apartment and arrested him.

Judge Mukasey delivered his verdict on August 16, 2005, finding Colon guilty on all three counts. With respect to Count Two (possession of a fraudulent green card) and Count Three (use of a fraudulent passport), Judge Mukasey stated that he did understand the charges to be "seriously contested" and found as follows:

> When the defendant was arrested in his apartment, agents found a resident alien card, introduced as Government Exhibit 2, that carried his picture and the name Jose Ernesto Tapia Martinez. Introduced as Exhibit 1A was the application for that card, which shows the same handwriting as exhibits 7A to 7E, also seized from the defendant's apartment at the time of his arrest and which bear his handwriting. There can be little question that he was aware that he possessed the card in another name, and his apartment was located in the Southern District of New York. Accordingly, defendant is guilty of the charge in Count Two.
> As to the passport, the subject of Count Three, the evidence was very much the same. Domincan passports bearing the defendant's picture and the name, Jose Ernesto Tapia Martinez were seized from the defendant's apartment and were introduced as exhibits 3A and 3B in evidence. They bore stamps dated 1995, 2000, and 2001, which, according to the testimony of Immigrations and Customs Enforcement agent James Grathwohl showed the passport had been used to arrive in the United States, likely at JFK airport. (Tr. 22-23). In addition, the defendant admitted to investigator Alex Colon of the Amtrak police that he had used the passports for travel outside the United States. Therefore, the defendant is guilty of the charge in Count Three.

Tr. of August 16, 2005 Verdict ("Verdict Tr.") at 2-3.

With respect to the narcotics conspiracy count of the indictment, Judge Mukasey found that "Jimenez's account of the defendant's participation in heroin trafficking . . . makes it plain that defendant was not a substantial customer for the heroin that Jimenez provided," but that "[n]onetheless, Jimenez's testimony was sufficient to convince me beyond a reasonable doubt that defendant dealt in heroin, albeit in modest amounts, during the period charged in the indictment." *Id.* at 7-8. Consequently, Judge Mukasey found Colon guilty of Count One. *Id.*

After the verdict was read, Colon's counsel raised the issue of the drug quantity, and both counsel engaged the Court in a discussion of what the trial evidence showed. The Government contended that the evidence established transactions in excess of one kilogram of heroin, a conclusion that Colon's counsel disputed. *Id.* at 9-10. Judge Mukasey stated that he would review the testimony and hear from counsel on the issue prior to sentencing. *Id*.

On September 8, 2005, the Court held a hearing on the subject of drug quantity and found that the amount of heroin attributable to Colon was between 100 and 1,000 grams.  Tr. of September 8, 2005 Hearing ("Pre-Sentence Hrg. Tr.") at 2.  Judge Mukasey disagreed with the Government's contention that Colon was responsible for transactions in excess of one kilogram for three reasons.  First, he noted that Jimenez testified from memory, not from records, as to transactions that had taken place years prior and made a "series of sort of ballpark estimates . . . with absolutely no precision at all." *Id.* at 2-4.  Second, with respect to Jimenez's testimony about the 800 grams of heroin transported to New York from Miami in a pair of shoes, Judge Mukasey testified that the size of a kilogram of heroin approximates the size of a kilogram of cocaine and that both are "roughly the size of, say, this volume of the Criminal Code of Rules." *Id.* at 3.  Judge Mukasey went on to state that "I will tell you, it is counterintuitive to me that there were 800 grams concealed in a pair of sandals, unless they were platform sandals, which I seriously doubt.  Maybe it was 500, maybe it was less, but there is a lot that hinges on the precision of [Jimenez's] recollection." *Id.*  Finally, Judge Mukasey pointed to Jimenez's testimony that Colon still owed him $3,000 in connection with the later, smaller transactions in the 100 to 200 gram range, noting "at $60 a gram, that works out to 50 grams." *Id.* at 4.  Although Judge Mukasey noted that it was possible Colon made partial payments, he noted that "given that relatively small amount of debt . . . I have a hard time concluding beyond a reasonable doubt, that what we're talking about here is a kilo or more and, therefore, I'm not going to." *Id.*  Judge Mukasey thus found that the heroin conspiracy entailed more than 100 grams but less than one kilogram of the drug. *Id.*

Colon was ultimately sentenced on February 14, 2006.  The presentence report ("PSR") calculated a base offense level of 30, based on the estimate that Colon's "criminal activity involved distribution of between 700 grams and 1 kilogram of heroin."  Colon was assigned criminal history category I, as the instant offense was his first.  Finally, because he was not eligible for any adjustments to the base offense level, the PSR recommended total offense level of 30 and a guideline sentence of between 97 to 121 months.

At the sentencing hearing, Judge Mukasey noted that "if the guidelines were directly applied, that would yield a range of 97 to 121 months," but that he was "going to go off the guidelines to a limited extent." Tr. of Feb. 14, 2006 Proceedings ("Sentencing Hrg. Tr.") at 13.  Judge Mukasey sentenced Colon to concurrent 84 month terms on all three counts on the basis of

his status as a deportable alien which meant that he was "certain not to be released early and certain to serve time before his deportation." *Id.*

Colon filed a timely appeal and the Second Circuit affirmed his conviction. *United States v. Duran-Colon*, 252 Fed. Appx. 420, 422 (2d Cir. 2007). The Circuit declined to address the merits of Colon's ineffective assistance of counsel claim, noting that "the facts relevant to such a claim are best developed in collateral habeas proceedings under 28 U.S.C. § 2255." *Id.* This petition followed.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255 ("§ 2255") relief is provided on the ground that a prisoner is in custody in violation of the Constitution or laws or treaties of the United States.[4] *See Davis v. United States*, 94 S.Ct. 2298, 2304 (1974). To prevail on a § 2255 claim, petitioner must show either that (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; or (3) the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *See Woodard v. United States*, No. 04 CIV 9695, 2005 U.S. Dist. LEXIS 26802, at *6 (S.D.N.Y. Nov. 8, 2005) (citing *Johnson v. United States*, 313 F.3d 815, 817 (2d Cir. 2002)); 28 U.S.C. § 2255. The statute further provides that if any of the grounds enumerated above are present, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*

## III. DISCUSSION

### A.  Ineffective Assistance of Counsel

Petitioner seeks an order vacating his conviction on the grounds that he did not receive effective assistance of counsel as guaranteed by the Sixth Amendment. "The benchmark for judging any claim of ineffective[] [assistance of counsel is] . . . whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord*

---

[4] 28 U.S.C.§ 2255 provides, in pertinent part:
> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2007).

*Wiggins v. Smith*, 539 U.S. 510 (2003).  Thus, to prevail on an ineffective assistance of counsel claim, the defendant must show that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) he was prejudiced by his counsel's deficient representation. *Strickland,* 466 U.S. at 687.  The proper measure of an attorney's performance is "[r]easonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  Prejudice is shown if, but for the deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *Id.* at 534.  A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.*  Thus, an error by Petitioner's counsel, even if deemed professionally unreasonable, does not warrant setting aside the judgment if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691. "In applying this standard, a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Gaskin,* 364 F.3d 438, 468 (2d Cir. 2004)

**B.      Counsel's Failure to Pursue Suppression of Statements Concerning False Passport and Immigration Documents.**

Colon's claim of ineffective assistance based upon his trial counsel's failure to pursue suppression of his statements concerning the fraudulent passport and green card lacks merit because Colon cannot show prejudice.  "In order to show ineffective assistance for the failure to make a suppression motion, the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the evidence had been suppressed." *United States v. Matos*, 905 F.2d 30, 32 (2d Cir. 1990) (citing *Kimmelman v. Morrison,* 477 U.S. 365, 375-76 (1986)).[5]

---

[5] The admissibility of Colon's pre-warning statements turns on whether he was "in custody" at the time they were made, *i.e.* as the agents conducted the consent search of his home.  The Second Circuit has affirmed a district court's holding that a defendant was not "in custody" during a consent search of his home where the agents told him that they were "guests in his home" and that they would leave if he asked them to. *United States v. Badmus*, 325 F.3d 133, 139 (2d Cir. 2003); *see also United States v. Mitchell,* 966 F.2d 92, 99 (2d Cir. 1992) ("[i]t is similarly clear that [defendant] was not in custody during his interview[, which] occurred in the familiar surroundings of [his] home").  No evidence in the record suggests that the agents told Colon he was not free to leave prior his making the statements about the passport and immigration documents.  Therefore, Colon's motion to suppress those statements is of dubious merit. *See Mitchell,* 966 F.2d at 99. However, had Colon's counsel been concerned with suppression of those statements he or she would likely have developed a different record.  Nevertheless, because Colon's inability to establish prejudice is independently dispositive of his ineffective assistance claim, I expressly decline to decide whether the suppression motion was meritorious.

7

Here, the only one of Colon's statements for which suppression was originally sought was introduced at trial: namely, his admission that he used passports not his own to travel to and from the United States. This statement was of no relevance to Count Two, which charged the possession of fraudulent green cards, and not necessary to sustain a conviction for Count Three. In rendering his verdict on Count Two, Judge Mukasey noted that the resident alien card that bore Colon's photograph but a different name was recovered during the search and that the Government introduced the application for the card, which matched Colon's handwriting. Verdict Tr. at 2-3. As to Count Three, Judge Mukasey found that the "evidence was very much the same," that the passports were seized from the apartment, and that they "bore stamps dated 1995, 2000, and 2001, which, according to the testimony of Immigrations and Customs Enforcement agent James Grathwohl showed the passport had been used to arrive in the United States, likely at JFK airport." *Id*. Although Judge Mukasey noted Colon's admission that he had used the passport, it was not necessary to his verdict and therefore the evidence was cumulative. Consequently, Colon cannot show a reasonable probability that, had the statements been suppressed, the verdict would have been different as to Counts Two and Three. *Matos*, 905 F.2d at 32. Because Colon cannot show that he suffered prejudice as a consequence of his counsel's apparent abandonment of the motion to suppress his statements concerning the passports and green card, this claim of ineffective assistance of counsel must be DENIED.

    **C.**    **Counsel's Failure to Object to the PSR's Finding Regarding Drug Quantity.**

Colon next argues that his counsel rendered ineffective assistance by failing to object to the PSR's calculation of an offense level of 30 predicated on a finding that the narcotics conspiracy involved 700 to 1,000 grams of heroin. Colon's trial counsel did misstate Judge Mukasey's finding in her presentence letter to the Court. She stated that the Court had "ruled that the drug weight applicable under the [Sentencing Guidelines] in this case was between 700 grams and 1 kilogram." In fact, "700 grams to 1 kilogram" was the PSR's finding; Judge Mukasey merely ruled that the conspiracy involved between 100 grams and 1 kilogram of heroin. *Compare* Ex. R (Sept. 21, 2005 Order) *with* Ex. S (February 8, 2006 Letter). However, despite this mischaracterization, Colon's counsel arguably had a strategic reason to focus the Court's attention at sentencing on issues other than drug quantity and even if her error fell below objective standards of professional reasonableness, Colon cannot show prejudice.

Colon first faults his trial counsel for failing to seize the opportunity at the Court's post-verdict hearing when Judge Mukasey specifically commented on the inconclusive nature of

8

Jimenez's testimony as to drug quantity. In retrospect, Colon may be right that "if ever there was an opportunity to vigorously contest the quantity of drugs upon which the sentence was based, this was it." Pet.'s Reply Mem. at 4. But it must not be forgotten that at the hearing Judge Mukasey found in Colon's favor, by finding that the conspiracy involved less than a kilogram of heroin despite the Government's argument that as many as 1,600 grams were involved. Under *Strickland*, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight," 466 U.S. at 689, and what looks like a clear opportunity in hindsight may not have appeared as such at the time.

Colon argues that his trial counsel erred even more acutely by mischaracterizing Judge Mukasey's finding as to drug quantity in her presentence letter because a decision based on an erroneous understanding of the law or facts is not the type of "strategic calculation" that is generally immunized from challenge under *Strickland*. *See Kimmelman v.* Morrison, 477 U.S. 365, 385 (1986) (defense counsel's failure to seek discovery on the basis of a "mistaken belief[]" that the state was "obliged to take the initiative" was not based on "strategy"); *Williams v. Taylor*, 529 U.S. 362, 395 (2000) (failure to investigate records based on erroneous belief that state law barred access to them was not a "strategic calculation"). As the Second Circuit has recognized, "'[f]amiliarity with the structure and basic content of the [Sentencing] Guidelines ... has become a necessity for counsel who seek to give effective representation.'" *Johnson v. United States*, 313 F.3d 815, 818 (2d Cir. 2002) (quoting *United States v. Day,* 969 F.2d 39, 43 (3d Cir.1992)). Colon's trial counsel should have recognized the sentencing consequences of the difference between Judge Mukasey's finding (of 100 to 1,000 grams) and the PSR's finding (of 700 to 1,000 grams) and that the latter was subject to attack at the sentencing hearing.

In an analogous case, *Johnson v. United States*, the Second Circuit held that "trial counsel's representation fell below the 'range of competence demanded of attorneys' when he failed to challenge the PSR's computation of [a §2255] petitioner's offense." 313 F.3d 815, 818 (2d Cir. 2002) (per curiam) (quoting *Strickland*, 466 U.S. at 687). There, the petitioner was convicted of selling crack to a confidential informant and, at trial, the parties stipulated to the fact that the drugs at issue actually weighed 48.3 grams. *Id.* at 816. The petitioner's PSR, however, recommended that the district court set the base offense level on a finding that the petitioner agreed to sell more than 50 grams of crack. *Id.* The district court sentenced him to 151 months, "observing that it was 'the minimum' allowed." *Id.* The Circuit found that trial counsel's failure to take note of Application Note 12 to Section 2D1.1 of the Sentencing

9

Guidelines, which provides in part that "the agreed-upon quantity of the controlled substance shall be used to determine the offense level *unless the sale is completed and the amount delivered more accurately reflects the scale of the offense*." *Id*. at 818 (quoting U.S.S.G. §2D1.1, cmt. N 12) (emphasis supplied by the Court of Appeals).  On these facts, the Circuit found that an objection on the grounds of Application Note 12 was "'a dead-bang winner'" and failure to object to the calculation error was a clear lapse in representation. *Id.* (quoting *Page v. United States*, 884 F.2d 300, 301 (7th Cir. 1989).  The Circuit further found that the petitioner was prejudiced by the lapse in representation because the district court commented favorably about petitioner at sentencing and stated that he was giving him the "minimum" allowed under the higher, and ultimately incorrect, guidelines range.

      Although superficially similar to the case at bar, the facts of *Johnson* are distinguishable.  There, defense counsel did not object to the fact that the PSR report failed to consider a Sentencing Guideline Application Note that "squarely covered" his offense and would have provided for a lesser sentence.  313 F.3d at 818.  This was a "calculation error" that was so obviously wrong it was a "dead bang winner." *Id.*  Here, the PSR was not clearly in error, and arguably made no error at all.  The report based its range on "the Offense Conduct section and findings made by the Court." PSR at 6.  The PSR correctly noted the Court's 100 gram to 1 kilogram range, but appears to have found the higher range more likely.  It was not above Judge Mukasey's determined range, nor an obvious calculation error; although ambiguous, the government's evidence could support this determination.  The two calculations are not necessarily directly correlations either: Judge Mukasey was making a finding for statutory purposes, where the 1 kilogram threshold was most critical, and may not have been trying to fashion a more exacting measure of the drug weight for sentencing purposes.  In other words, Colon's counsel could not have challenged the PSR as "wrong" or "in error" – she could only challenge the fact that it found toward the high-end of the Judge's range when it ultimately made the base-level determination.  In *Johnson*, counsel's assistance was ineffective because he failed to note an error in the PSR.  Here, because the issue is not a clearly erroneous PSR, but rather a failure to note the distinction between the PSR and Judge Mukasey's findings, counsel's decision does not demonstrate ineffective assistance.  In fact, counsel may have had legitimate tactical concerns about re-opening this issue.

      Colon assumes that his counsel's letter was written in error, but in fact she arguably had a strategic reason to try to "lock in" the PSR's finding as to drug quantity and focus the Court's

10

attention on other issues at sentencing. As noted above, one of Colon's defenses was that he dealt primarily in cocaine, not heroin, and the Court heard testimony that Jimenez paid Colon to package "a couple of kilos" of cocaine. "A Sentencing Guidelines calculation must begin with an identification of the defendant's relevant conduct, which in the case of a drug possession offense includes the quantity of drugs controlled by the defendant, whether as a principal or as an aider and abettor." *United States v. Jones*, 531 F.3d 163, 174-175 (2d Cir. 2008); U.S.S.G. § 1B1.3. This determination must be decided by the sentencing judge on the basis of a preponderance of the evidence. *Id.* Because a finding of drug quantity for conviction under 21 U.S.C. § 841 is not coextensive with a finding for sentencing purposes under U.S.S.G. §2D1.1, Colon's trial counsel may have been attempting to frame drug quantity as a settled issue and thereby prevent the "couple of kilos" of cocaine testimony from playing any role in Colon's sentence.[6] By not re-arguing this issue, counsel avoided the risk that Judge Mukasey would consider the evidence further and determine that the Defendant was responsible for even more drugs, and deserving an even harsher sentence. Such a strategic choice, of course, if made after due investigation, is insufficient to establish constitutionally deficient assistance of counsel. *Strickland,* 466 U.S. at 691.

Indeed, unlike the omitted argument in *Johnson*, the argument that Colon's counsel failed to make at sentencing was far from a "dead bang winner." Judge Mukasey had clearly credited Jimenez's testimony as to the *occurrence* of both the larger transaction involving heroin transported from Miami in a pair of shoes and the series of "three or four" or "two or three" smaller transactions that Jimenez testified were in the range of 100, 150 or 200 grams each.[7] Even if Colon's trial counsel had been able to convince Judge Mukasey to cut the 800 gram transaction in half and that the three later transactions had been at the low end of what Jimenez testified to (*i.e.* 100 grams each), 700 grams of heroin would still be attributable to the conspiracy. Colon argues that Judge Mukasey's reference at the presentence hearing to the $3,000 that Colon owed Jimenez suggests that the dollar amount of the transaction supported no

---

[6] At sentencing Colon's counsel did not shy away from the issue of quantity completely, but rather argued that "there is something surreal about . . . hav[ing] to send a person to jail for a very long period of time based on grams and nothing about his own personality." Sentencing Tr. 8. This is not at odds with a sentencing strategy that seeks to circumscribe the potential affect of drug quantity on a sentence.

[7] Jimenez testified on direct that in 2002 and 2003 he supplied Colon with heroin "around three [] or four times" in weights of "100, 150, 200." Tr. 54. On cross examination, Jimenez testified to the same quantity range but that he provided Colon with drugs from a particular supplier "two or three times." Tr. 125.

11

more than 50 grams, but the testimony in fact suggests a contrary conclusion: Jimenez testified that "in the beginning" Colon was good about paying, but "afterwards" he was not—such testimony suggests a series of transactions, not an isolated $3,000 deal. This is not to say that the omitted argument was entirely frivolous—far from it. But it is "not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

      Irrespective of whether his trial counsel's representation at sentencing fell below objectively reasonable professional standards, Colon's ineffective assistance claim fails because he cannot "affirmatively prove prejudice" by demonstrating that "but for counsel's unprofessional errors the result of the proceeding might have been different." *Strickland*, 466 U.S. at 693-94. Unlike the sentencing judge in *Johnson* who felt constrained by the "minimum" sentence he erroneously believed to be applicable, here Judge Mukasey accepted Colon's mitigating factor arguments under §3553(a) and decided to "go[] off the guidelines to a limited extent." Colon has a plausible argument that because Judge Mukasey departed downward from the sentencing range recommended by the PSR, had the PSR recommended a lower range he would have similarly departed from the bottom of the recommended range; there is, at least arguably, a reasonable probability that he would have done so. *See*, *e.g., Porter v. United States*, No. 09 Civ. 1146 (CPS), 2009 WL 2601297 (E.D.N.Y. Aug. 20, 2009) ("I explicitly imposed a sentence at the very bottom end of the guideline range; had the range been lower, it is likely that the ultimate sentence would have been lower as well.") The problem with this argument is that there is *not* a reasonable probability that but for counsel's failure to reargue drug quantity at sentencing, Judge Mukasey would have started from the lower range: *that* would have required a finding that the conspiracy involved between 400 and 700 grams of heroin, a conclusion unsupported by the trial testimony credited by Judge Mukasey. *See*, *e.g.*, *Bedoya-Cano v. U.S.*, No. 07 Civ. 9276 (JSR)(DF), 2008 WL 4200167 (S.D.N.Y. May 29, 2009) (§2255 petitioner failed to establish prejudice in counsel's failure to argue against sentencing enhancement proposed by PSR where evidence in the record supported it). Consequently, Petitioner's second claim of ineffective assistance also must be DENIED.

      **D. Petitioner's Request for an Evidentiary Hearing**

      Petitioner has also requested an evidentiary hearing to review his claims. However, because the record clearly shows that there is no "reasonable probability" that but for his trial

concerning the passports and green card, Colon's sentence would have been different, no evidentiary hearing is warranted. *Chang v. United States,* 250 F.3d 79, 86 (2d Cir.2001) (a district court has discretion to rely on documentary evidence in deciding habeas petition, and need not conduct a "full-blown testimonial hearing" when in-court testimony "would not offer any reasonable chance of altering [the court's] view of the facts").

### IV. CONCLUSION

For the foregoing reasons, Colon's petition pursuant to 28 U.S.C. §2255 is DENIED. The Clerk of Court is instructed to close this case and any open motions and remove it from my docket.

**SO ORDERED**
October 16, 2009
New York, New York

U.S.D.J.